IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Belcourt Public School District and Angel Poitra, | ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. 4:12-cv-114 |
| Ella Davis and Turtle Mountain Tribal Court, | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Belcourt Public School District, | ) ) | |
| Plaintiff, | ) ) | |
| -vs- | ) ) ) | Case No. 4:12-cv-115 |
| Erica Malaterre and Turtle Mountain Tribal Court, | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Belcourt Public School District and Chris Parisien, | ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) ) | Case No. 4:12-cv-116 |
| Mike Nelson and Judy Nelson on behalf of their Minor Child S.N. and Turtle Mountain Tribal Court, | ) ) ) ) | |
| Defendants. | ) | |

| | |  |
|---|---|---|
| Belcourt Public School District, Roman Marcellais and School Board Members for the Belcourt Public School District, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:12-cv-117 |
| -vs- | ) ) | |
| Bruce Allard, Martin Desjarlais, Jeff Laducer, Chad Marcellais, Robert St. Germain, and Turtle Mountain Tribal Court, | ) ) ) ) | |
| Defendants. | ) | |
| Belcourt Public School District, Roman Marcellais and School Board Members for the Belcourt Public School District, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:12-cv-118 |
| -vs- | ) ) | |
| Steve Herman and Turtle Mountain Tribal Court, | ) ) ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

    **I.    Introduction and Summary of Holding**

A number of lawsuits have been commenced against the Belcourt Public School District ("School District") and its employees in Turtle Mountain Tribal Court. The Turtle Mountain Tribal Court of Appeals has concluded that jurisdiction properly lies in tribal court. The School District commenced these actions, seeking a declaration that the tribal court lacks jurisdiction over the School District and its employees  The limited jurisdictional issue before this Court is whether a state political subdivision may be subjected to suit in a tribal forum when it enters into

2

a consensual agreement with a tribe to operate a high school on tribal trust land.

This Court finds that Montana v. United States, 450 U.S. 544 (1981) is inapplicable when determining the adjudicatory authority over nonmembers who consensually agree to operate and conduct business in conjunction with the tribe on tribal trust land. Even if Montana applies, the result would be the same. The "first exception" in Montana allows tribal courts to exercise jurisdiction when a nonmember has entered into a consensual relationship with a tribe or its members, through commercial dealing, contracts, leases, or other arrangements. This case fits squarely within the plain language of the exception.

Plaintiffs' motions for summary judgment are DENIED. These cases are hereby remanded to the Turtle Mountain Tribal Court for consideration on the merits.

## II.     Factual and Procedural Background

The School District is a political subdivision of the State of North Dakota. Bismarck Public School Dist. No. 1 v. State By and Through North Dakota Legislative , 511 N.W.2d 247, 251 (N.D. 1994); See Baldwin v. Bd. of Educ. of City of Fargo, 33 N.W.2d 473, 481 (N.D. 1948) (North Dakota's Constitution recognizes school districts as political subdivisions). The Turtle Mountain Band of Chippewa Indians (the "Tribe") has arranged with the School District to share mutually the responsibility for educating the students residing on Indian lands on or near the Turtle Mountain Indian Reservation (Docs. #19-1 & 19-2, Turtle Mountain Community High School Plan of Operations). The agreement between the Tribe and the School District, beginning on July 1, 2006, provided the School District with the "exclusive administrative authority" over the day-to-day operations of the School. (Doc. #19-1, ¶ 1). Likewise, the renewed contract provides the School District with the authority to "administer the day-to-day operations of the

Grant High School, subject to and in compliance with the Plan of Operations, the Contract and all Applicable Law." (Doc. #19-2, ¶ 4). The "administration" includes the employment, supervision, and termination of staff; the salaries and benefits provided to staff; and other conditions of staff employment. Id.

Several members of the Tribe have filed employment-related claims against the School District and its employees. Ella Davis filed suit in tribal court against School District employee Angel Poitra, alleging that Poitra defamed her by placing a letter of reprimand in her employment file (Case No. 4:12-cv-114 -Doc. #1, Complaint ¶ 1). The tribal court dismissed Davis's suit for lack of jurisdiction over the School District and its employees acting in their official capacities. The Turtle Mountain Appellate Court reversed and remanded the case to tribal court.

Erica Malattere, a tribal member, applied for a payroll officer position with the School District (Case No. 4:12-cv-115, Doc. #1, Complaint ¶ 9). While Malattere alleges she was rated the number one candidate for the position, the School District hired a non-tribal member. Id. at ¶¶ 9, 11. Malattere filed suit in tribal court alleging that the School District violated its policies and Federal Indian Preference laws. Id. at 12. The tribal court dismissed Malattere's suit for lack of jurisdiction over the School District and its employees acting in their official capacities. The Turtle Mountain Appellate Court reversed and remanded the case to tribal court.

In another case, Bruce Allard, Martin Desjarlais, Jeff Laducer, Chad Marcellais, and Robert St. Germaine, employees of the School District's bussing department, filed suit in tribal court alleging that the School District failed to advertise a promotion and they should be given a similar promotion and are entitled to back pay (Case No. 4:12-cv-117- Complaint ¶ 16). The Turtle Mountain Appellate Court held that the tribal court has jurisdiction to hear the claims

brought by Allard, Desjarlais, Laducer, Marcellais, and St. Germaine.

Lastly, Steve Herman filed suit in tribal court alleging he was wrongfully terminated as a bus driver for the School District (Case No. 4:12-cv-118 - Doc. #1, Complaint ¶¶14-15). The Turtle Mountain Appellate Court concluded that the tribal court has jurisdiction to hear Herman's claims.

In the other case consolidated in this action, Mike Nelson and Judy Nelson filed suit in tribal court on behalf of S.N. alleging Chris Parisien, the School District's Resource Officer, used improper force to detain S.N. and claimed that the force used by Parisien amounted to cruel and unusual punishment (Case No. 4:12-cv-116 - Complaint ¶¶ 10-12). The Turtle Mountain Appellate Court concluded that the tribal court has jurisdiction to hear the claims brought by the Nelsons on behalf of S.N.

The School District seeks a declaration from this Court that (1) the tribal court lacks jurisdiction over the School District and its employees to decide these claims; and (2) an injunction prohibiting the tribal court from adjudicating the claims.

**III.    Analysis**

A tribal court's exercise of jurisdiction over non-Indians is a federal question answered by federal law. Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians, 471 U.S. 845, 852 (1985). As a general rule, "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." Strate v. A-1 Contractors, 520 U.S. 438, 445 (1997). The United States Supreme Court has carved out two categories where tribal civil jurisdiction may be exercised over non-Indians/nonmembers even though Congress has not expressly authorized it: (1) when a nonmember has entered into a

consensual relationship with a tribe or its members, through commercial dealing, contracts, leases, or other arrangements; or (2) when the nonmember's conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Montana v. United States, 450 U.S. 544, 565-66 (1981).

Despite the general rule and enumerated exceptions, the scope of tribal civil authority over nonmembers remains "ill-defined." Attorney's Process & Investigation Services, Inc. v. Sac & Fox Tribe of Mississippi in Iowa, 609 F.3d 927, 934 (8th Cir. 2010) (citing Nevada v. Hicks, 533 U.S. 353, 376 (2001) (Souter, J., concurring)). As noted by the Eighth Circuit:

> The controlling principles are broad and abstract and must be carefully applied to the myriad of factual scenarios they govern. Determining the contours of tribal civil jurisdiction and the boundaries of tribal sovereignty requires consideration of the historical scope of tribal sovereignty and the evolving place of the tribes within the American constitutional order, careful study of precedent, and ultimately a 'proper balancing' of the conflicting interests of the tribes and nonmembers.

Attorney's Process, 609 F.3d at 934.

The tribal appellate court in two of the underlying cases questioned whether Montana is the controlling doctrine. (Doc. #19-6, Memorandum Decision - "It is not therefore clear to this Court that the Parties are correct in their assertion that the Montana test should even apply to this case because this case involves non-Indian management of a school on tribal lands.").

In order to appreciate the status of the law with regard to tribal court jurisdiction over nonmembers and understand how it fits with this Court's decision, a brief overview is crucial. In 1959, the Supreme Court held that a state court lacked jurisdiction over a claim that arose on the reservation and was brought by a non-Indian plaintiff against tribal members. Williams v. Lee, 358 U.S. 217 (1959). Crucial to the reasoning in Williams was the recognition that tribes retain sovereignty over reservation affairs. Id. at 223.

6

Some 20 years later, in Montana, the Supreme Court acknowledged that while tribes retain considerable civil regulatory control over nonmembers on tribal lands within reservation boundaries, they do not have unlimited power to regulate non-Indian fishing and hunting on reservation land owned in fee by nonmembers of the tribe.  Shortly after Montana was decided, the Supreme Court developed, in two cases, the "tribal court exhaustion" doctrine. Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 852 (1985); Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 18 (1987).  The tribal court exhaustion rule requires nonmembers to exhaust their remedies in the tribal judicial system before they can challenge tribal jurisdiction in federal court.  Neither Nat'l Farmers nor Iowa Mutual addressed whether tribes had adjudicatory authority over cases involving nonmember defendants.

Some scholars believed that the Supreme Court was leaning toward not applying the same presumption against tribal adjudicatory authority that it had applied to regulatory activities in Montana. Krakoff, Sarah, Tribal Civil Judicial Jurisdiction Over Nonmembers: A Practical Guide for Judges, 81 U. Colo. L. Rev. 1187, 2010 WL 4950559 (Fall 2010).  While leaving the issue of tribal courts' civil jurisdiction for another day, the Supreme Court explained:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

Nat'l Farmers, at 855-56.

In 1997, the Supreme Court expressly held, despite the statements in Nat'l Farmers, that the principles set forth in Montana govern whether the tribal court has authority to adjudicate a highway-accident tort suit between non-Indians occurring on a portion of a North Dakota state

7

highway running through the Fort Berthold Indian Reservation. Strate, 520 U.S. at 442-43. The Supreme Court adhered to prior precedent limiting tribal civil jurisdiction of nonmembers of the tribe on non-Indian fee lands to controlling provisions in treaties and statutes and the two exceptions identified in Montana. Id. at 453.

The Supreme Court's two post-Strate cases on tribal civil judicial jurisdiction, while not adopting a categorical prohibition against tribal civil jurisdiction over nonmembers, identify other circumstances in which tribal jurisdiction cannot be exercised. Nevada v. Hicks, 533 U.S. 353 (2001) (tribal court does not have jurisdiction to adjudicate civil claims against state officials who entered tribal land to execute a search warrant against a tribe member suspected of having violated state law outside the reservation); Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316 (2008) (rejecting tribal court exercise of jurisdiction over a non-Indian bank that had sold land it owned on the reservation to non-Indians).

Despite the emergence of some clarity in the law, the Supreme Court's boundaries for tribal jurisdiction continue to present challenges. For instance, it remains an open question whether a tribe's adjudicative authority is equal to its regulatory authority. Elliott v. White Mountain Apache Tribal Court, 566 F.3d 842, 850 n.5 (9th Cir. 2009). Moreover, the Court in Hicks limited its holding to the issue of tribal court jurisdiction over state officers enforcing state law. Hicks did not apply the Montana exceptions. Instead, the Court determined that tribal ownership, alone, was not enough "to support tribal regulatory jurisdiction over nonmembers and analyzed the jurisdictional issue within the context of whether tribal regulatory authority over the state wardens was 'necessary to protect tribal self-government or to control internal relations.'" North Cent. Elec. Co-op, Inc. v. North Dakota Pub Serv. Comm'n, 837 N.W.2d 138, 144 (N.D.

8

2013) (quoting Hicks, at 360).  With the exception of Hicks, the Supreme Court has applied Montana "almost exclusively to questions of jurisdiction arising on non-Indian land or its equivalent."  Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196, 1205 (9th Cir. 2013).

With this context in mind, the Court begins with the question of whether the claims giving rise to the underlying actions arose on non-Indian land or its equivalent.  Finding no evidence to the contrary in the record, the school, like many schools on Indian reservations, sits on federal Indian land held in trust for the Turtle Mountain Band of Chippewa Indians.  While the ownership status of the land is not necessarily dispositive in determining the propriety of tribal jurisdiction over nonmembers, it is certainly one factor courts must consider.  Hicks, 533 U.S. at 360.  The situs giving rise to the underlying claims favors jurisdiction in tribal court.

Moving on to the specific nature of the claims, the Tribe and School District have entered into a mutual agreement to fulfill their responsibilities of providing a public education for children living on or near the reservation.  The School District, a nonmember of the Tribe by virtue of its status as a political subdivision, contractually agreed to administer the day-to-day operations consistent with tribal, state, and federal laws.  The only reason the school district is on the reservation is because of the contractual arrangement it made with the Tribe.  Unlike Strate, which involved a "run-of-the-mill" highway accident that was distinctly non-tribal in nature, or Montana, which involved a tribe's ability to regulate the hunting and fishing activities of nonmembers, or Plains Commerce Bank, which involved a legal dispute over the title of land owned by a non-Indian, the tribal members' claims against the School District involve alleged wrongdoing by School District employees.  The very nature of the type of civil claims in this

case, some involving alleged violations of tribal law, put this case outside the reach of current Supreme Court precedent.

Along with these factors listed above, the Court is mindful of two other significant principles that have not been abrogated by the Supreme Court: (1) the federal policy of promoting tribal self-government, which necessarily encompasses the development of a functioning tribal court system, Iowa Mut. Ins. Co., 480 U.S. at 16-17; and (2) because "tribal courts are competent law-applying bodies, the tribal court's determination of its own jurisdiction is entitled to 'some deference.'" Water Wheel Camp Recreational Area, Inc. v. LaRance, 642 F.3d 802, 808 (9th Cir. 2011) (quoting FMC v. Shoshone-Bannock Tribes, 905 F.2d 1311, 1313 (9th Cir. 1990)). Here, the tribal court has determined that it has jurisdiction over the claims against the School District. Upon an independent examination of the jurisdiction question, this Court is unable to discern any error in the tribal court's analysis.

Tribal courts are important to the protection of significant tribal interests. The Court shares the tribal court's concern that if the tribal court lacks jurisdiction, tribal members may be left without recourse against non-Indian entities that operate on the reservation when they have legitimate grievances. Contrary to the School District's contention that the tribal court clearly lacks jurisdiction, the Eighth Circuit has concluded, in the context of a preliminary injunction motion, that "[i]t is not 'plain' that a tribal court lacks authority to exercise jurisdiction over tort claims closely related to contractual relationships between Indians and non-Indians on matters occurring on tribal lands." DISH Network Service L.L.C. v. Laducer, 725 F.3d 877, 885 (8th Cir. 2013).

Upon careful examination of the case law on tribal civil jurisdiction, the Court finds the

framework set forth in Montana does not apply to the underlying claims.  The tribal court ought to be afforded the opportunity and tasked with the responsibility of adjudicating civil problems involving its tribal members against the School District who has entered into a contractual arrangement to administer the day-to-day activities of the school on tribal trust land.  "For nearly two centuries now, we have recognized Indian tribes as 'distinct, independent political communities,' qualified to exercise many of the powers and prerogatives of self-government." Plains Commerce Bank, 554 U.S. at 327 (citations omitted).  The is no indication that the tribal court is ill-equipped or unable to address the alleged wrongdoings by School District employees.  There is also no explanation as to why the School District and its employees, who entered into a consensual agreement with the Tribe, should not be subject to the jurisdiction of the tribal court.

Even if Montana applies to the circumstances in this case, the Court would reach the same conclusion.  Montana grants tribal courts the power to exercise jurisdiction over the activities of nonmembers who enter consensual relationships with the tribes or its members, through commercial dealing, contracts, leases, or other arrangements.  Indisputably the Tribe and School District have entered into a contractual relationship to educate students on the Turtle Mountain Indian Reservation.  The facts of this case fit squarely within the circumstances identified by the Supreme Court in Montana.

The Court is unpersuaded by the unpublished decision from the District of Arizona that imposes additional requirements not found in Montana or its progeny.  Red Mesa Unified School Dist. v. Yellowhair, No. CV-09-8071-PCT-PGR, 2010 WL 3855183, **3-4 (D.Ariz. Sept. 28, 2010) (finding the first Montana exception only applies to private actors and not governmental actors or political subdivisions).  In Red Mesa, two school districts were operating public schools

within the boundaries of the Navajo and/or Hopi reservation on tribal trust land leased from the Navajo Nation.  One of the school districts was located solely on the Navajo reservation and the other was located on both the Navajo and Hopi reservations. That case has an added layer of complexity involving multiple schools on multiple reservations.  Red Mesa makes no mention of a cooperative agreement to educate students.  This fact, alone, likely renders the case inapposite.  Further, while the district court concluded that the leases allowing the schools to be placed on tribal land are insufficient to overcome Montana's presumption against tribal jurisdiction, it did so by relying on language not found anywhere in Montana or its progeny.

    The Supreme Court in Hicks noted "[w]hether contractual relations between State and tribe can expressly or impliedly confer tribal regulatory jurisdiction over nonmembers - and whether such conferral can be effective to confer adjudicative jurisdiction as well - are questions that may arise in another case, but are not at issue here."  533 U.S. at 372.  Contrary to the School District's contention, Hicks did not create a broad-sweeping rule that a state entity or political subdivision can never be sued in tribal.  The state interest in Hicks - protecting state law enforcement officers who entered tribal land to execute a search warrant - are very different than the state or tribal interests at stake in this case.  Even if Montana applies in this case, the first exception set forth in Montana squarely provides the tribal court with adjudicative jurisdiction over the School District's alleged wrongdoings in the underlying actions.

    **IV.**    **Decision**

    The Turtle Mountain Tribal Court has jurisdiction to adjudicate the tribal members' claims against the School District and its employees, whether the framework set forth in Montana v. United States, 450 U.S. 544 (1981) applies or not.  Plaintiffs' motion for summary

judgment is **DENIED**.  These cases are remanded to the Turtle Mountain Tribal Court for consideration of the merits.

    **IT IS SO ORDERED.**

Dated this 4th day of February, 2014.

                                              /s/ Ralph R. Erickson
                                              Ralph R. Erickson, Chief District Judge
                                              United States District Court